LESLIE H. JAMOUNEAU, A CITIZEN AND TAXPAYER OF THE CITY OF NEWARK, RELATOR, v. VINCENT J. MURPHY, DIRECTOR OF THE DEPARTMENT OF REVENUE AND FINANCE, ACTING AS COMPTROLLER OF THE CITY OF NEWARK, RESPONDENT.

Argued August 16, 1943—Decided September 17, 1943.

Before Justice COLIE.

For the relator, *Saul A. Wittes.*

For the respondent, *Raymond Schroeder* (by *Thomas L. Parsonnet*).

The opinion of the court was delivered by

COLIE, J. This matter is before the court upon a motion to quash the return to an alternative writ of *mandamus*.

The alternative writ allowed upon the relation of Leslie H. Jamouneau, a citizen and taxpayer of the City of Newark commands and enjoins Vincent J. Murphy, Director of Revenue and Finance, acting as comptroller of the City of Newark "to hold a complete and all-inclusive tax sale and exempt therefrom no delinquent properties required to be sold by law, and exempting therefrom only those delinquent proper-

ties upon which the City of Newark has contracts with delinquent taxpayers for the payment of such delinquency pursuant to the provisions of *Pamph. L.* 1943, *ch. 7,* or identical statutes passed in prior years, and in your discretion those items where the total tax delinquency is less than $10 in accordance with the provisions of *R. S.* 54:5–20; or cause to us of the contrary therefor signify." The return filed by the respondent sets forth that upon taking office "he adopted and announced the policy that a delinquent taxpayer could make arrangements to pay at once twenty-five per centum of all delinquent and current taxes, and to pay fifty per centum of the balance within twelve months, in monthly installments; and that, if such arrangements were fully carried out, the same arrangement would be renewed, so that the full amount of the delinquency would be paid off within eighteen months or two years." He asserts that the aforesaid practice finds authorization in chapter 7, laws of 1943 and *R. S.* 54:5–19.

To determine whether the course of action taken by respondent has the claimed statutory authorization, it is necessary to review the course of legislation leading up to the adoption of the two statutes above mentioned, *i. e., R. S.* 54:5–19 and *Pamph. L.* 1943, *ch. 7.* In 1918 the legislature enacted chapter 237 known as the "Tax Sale Revision." Section 16 thereof, so far as here pertinent, reads:

"When any municipal lien, or part thereof, on real property remains in arrears on the first day of July in the year following the date when the same became in arrears, the collector, or other officer charged by law in the municipality with that duty, shall enforce such lien by selling such property in the manner set forth in this act."

There was an amendment by chapter 120, laws of 1919, leaving unchanged the mandatory feature that the officer charged with such duty "shall enforce such lien by selling such property in the manner set forth in this act."

By chapter 251, laws of 1933, section 16 of the "Tax Sale Revision" was further amended and, with no substantial change, incorporated in the Revision of 1937 as *R. S.* 54:5–19. It reads:

"When unpaid taxes or any municipal lien, or part thereof, on real property, remains in arrears on July first in the calendar year following the calendar year when the same became in arrears, the collector or other officer charged by law in the municipality with that duty, shall subject to the provisions of the next paragraph, enforce the lien by selling the property in the manner set forth in this article.

"The term 'collector' as hereinafter used includes any such officer, and the term 'officer' includes the collector.

"The municipality may by resolution direct that where unpaid taxes or other municipal liens, or part thereof, are in arrears for more than one year, such sale shall include only such unpaid taxes or other municipal liens as were in arrears in the year designated in such resolution, and may by resolution, either general or special, direct that there shall be omitted from such sale any or all such unpaid taxes, and other municipal liens, or parts thereof, on real property, upon which regular installment payments are being made, but in case any installment is not paid when due the municipality may direct that the collector, or other officer charged by law with that duty, shall proceed to enforce such lien by selling in the manner in this article provided."

Chapter 251 of the laws of 1933 was approved June 21st, 1933, to take effect immediately. The date of its enactment becomes of importance because of the passage of chapter 109 of the laws of 1933. This latter act was approved on April 11th of that year and took effect immediately. It is entitled "An act relating to the collection of delinquent municipal liens" and recites as a preamble that "Whereas, the large volume of unpaid municipal liens is creating such a serious tendency toward non-payment of current taxes and municipal liens that a public emergency demands some plan be made available to municipalities for the prompt collection of current taxes and assessments without requiring the immediate payment of arrears; but such a plan to be helpful must recognize the need of the property owner to maintain as a first lien the mortgage encumbrance upon his property; Now, therefore, in order to encourage the owner to use every effort to keep his property by granting him an opportunity to pay

his present arrears in fixed installments over a term of years,". The act then provides that the municipality may by resolution make the act available to its citizens in which event all unpaid taxes or liens in arrears on January 1st, 1933, may be totaled and their payment spread over a period of five years. To become eligible for the benefits extended, the legislature by section 5 imposed the following condition:

"The right of any person interested in such property to pay such arrears in such installments shall be conditioned on the prompt payment of the installments of taxes of one thousand nine hundred and thirty-three and all subsequent taxes, assessments or other liens imposed or becoming a lien after January first, one thousand nine hundred and thirty-three, including all installments thereafter payable on assessments theretofore levied, and also the prompt payment of all installments of arrears as hereinbefore authorized. Prompt payment shall consist in making payment thereof within thirty days after the respective due dates."

The legislature has each year enacted similar legislation. Beginning with 1938 the preamble was dropped. *Cf. L. 1934, ch.* 418; *L. 1935, ch.* 42; *L. 1936, ch.* 53; *L. 1937, ch.* 40; *L. 1938, ch.* 139; *L. 1939, ch.* 88; *L. 1940, ch.* 14; *L. 1941, ch.* 36; *L. 1942, ch.* 27; *L. 1943, ch.* 7.

Until the passage of chapter 109, laws of 1933, there existed no statutory authority for the payment of delinquent taxes in installments. With the passage of that act installment payments of tax arrearages were authorized upon fulfillment of the condition imposed by section 5 thereof, namely, prompt payment of the current taxes. This legislation might have been construed to be in conflict with section 16 of the "Tax Sale Revision," *L.* 1918, *ch.* 237, as amended by *L.* 1919, *ch.* 120. We must, of course, assume that the legislature had in mind such a possibility. It therefore amended section 16 of the "Tax Sale Revision" within three months after it had passed the act providing for installment payments of tax arrearages. In amending section 16 it used broad language: "there shall be omitted from such sale any and all such unpaid taxes, and other municipal liens, or parts thereof, on real property, upon which regular installment

payments are being made." Respondent argues that this language permits the municipal officer charged with the duty of selling real property upon which taxes are delinquent, to omit any and all properties provided only that regular installment payments are being made.

With this contention the court does not agree. To accept it requires that the condition imposed by section 5 of chapter 7, laws of 1943 and the same section in the comparable statutes of prior years be disregarded. The law does not favor implied repealers and if, as here, it is possible to construe the statutes so that all of the provisions of each are effective, that is the course to pursue. The statutes under consideration are *in pari materia* and must be construed as a related whole so as to give effect to all parts thereof. A reading of the preamble of chapter 109, laws of 1933, and the requirement of prompt payment of current taxes leaves no doubt in a reasonable mind as to the legislature's intent. The return to the alternative writ of *mandamus* is frivolous in that it fails to establish any legislative authority for the course pursued.

Respondent's return challenges relator's standing in this proceeding. In *Hugg* v. *Camden*, 39 *N. J. L.* 620, the right of a citizen and taxpayer to resort to *mandamus* to enforce the performance of a duty by the common council of the city was established. Relator's right is clear. Respondent asserts a lack of jurisdiction in a single justice to quash the return to a writ of *mandamus*. No authority is cited nor is it likely that any exists.

Relator's right being clear, the respondent's return will be quashed and a peremptory writ of *mandamus* issued.